ILLINOIS OFFICIAL REPORTS

*McFatridge v. Madigan*, 2013 IL 113676

| | |
|---|---|
| Caption in Supreme Court: | MICHAEL M. McFATRIDGE *et al.*, Appellees, v. LISA M. MADIGAN, Appellant. |
| Docket No. | 113676 |
| Filed | May 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a former State's Attorney was sued for damages by individuals he had prosecuted, the State Employee Indemnification Act gave him a right, as an elected official, to retain his own counsel, but his *mandamus* action for the Attorney General to approve payment of his litigation expenses as they were incurred was properly dismissed where her refusal to do so was based on her determination that what was alleged was intentional, willful or wanton misconduct, although indemnification could take place later should a court or jury find otherwise. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, of Chicago, of counsel), for appellant.

Michael E. Raub, of Heyl, Royster, Voelker & Allen, of Urbana, and Terry A. Ekl, of Ekl Williams, PLLC, of Lisle, for appellees.

Sarah O'Rourke Schrup, of Chicago, and Sidley Austin LLP, of Washington, D.C. (Jeffrey T. Green and Elizabeth McEachron, of counsel), for *amicus curiae* Illinois Campaign for Political Reform.

Lisa Anne Hoffman, of Wheaton, for *amicus curiae* Illinois State's Attorneys' Association.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1  At issue in this appeal is whether section 2(b) of the State Employee Indemnification Act (the Act) (5 ILCS 350/2(b) (West 2010)) requires the state to pay the litigation expenses of an elected state official who has been sued in the course of his official duties. Plaintiffs, Michael McFatridge and the County of Edgar, filed a complaint for a writ of *mandamus* (see 735 ILCS 5/14-101 *et seq.* (West 2010)) in the circuit court of Sangamon County to compel defendant, Lisa M. Madigan, Attorney General of the State of Illinois (Attorney General), to approve payment by the state of all litigation expenses incurred by McFatridge in the defense of civil litigation. The circuit court dismissed the complaint, finding plaintiffs failed to establish a clear and undoubted right to relief. The appellate court reversed. 2011 IL App (4th) 100936. We now reverse the appellate court and affirm the circuit court's dismissal of the complaint.

¶ 2                                Background

¶ 3  McFatridge served as State's Attorney of Edgar County during the years 1980 to 1991. In 1987, McFatridge prosecuted Gordon "Randy" Steidl and Herbert Whitlock for the 1986 murders of Dyke and Karen Rhoads in Paris, Illinois. Steidl was convicted by a jury of both murders and received a death sentence, which was later reduced to a sentence of life imprisonment. Whitlock was convicted by a jury of the murder of Karen Rhoads and was sentenced to life imprisonment.

¶ 4	Both Steidl and Whitlock succeeded in having their convictions overturned. In Steidl's case, on June 17, 2003, the United States District Court for the Central District of Illinois granted his *habeas corpus* petition, vacated his conviction, and ordered that he be retried within 120 days or released from prison. *Steidl v. Walls*, 267 F. Supp. 2d 919 (C.D. Ill. 2003). In Whitlock's case, on September 6, 2007, the Illinois Appellate Court reversed his conviction and remanded for a new trial. *People v. Whitlock*, 374 Ill. App. 3d 1144 (2007) (unpublished order under Supreme Court Rule 23). Both Steidl and Whitlock have since been released from custody and have not been retried.

¶ 5	In May 2005, Steidl filed a complaint in the United States District Court for the Central District of Illinois against several individuals and entities involved in his prosecution, including McFatridge and Edgar County. He alleged civil rights violations under the federal and state constitutions, as well as various state law causes of action, including malicious prosecution, false imprisonment, and intentional infliction of emotional distress. Among other allegations, Steidl alleged that McFatridge, individually, jointly, and in conspiracy with his codefendants, fabricated false evidence, coerced and manipulated witness testimony, and suppressed favorable evidence, resulting in Steidl's convictions and imprisonment. In April 2009, Whitlock filed an amended complaint in the United States District Court for the Central District of Illinois containing substantially similar allegations against McFatridge, Edgar County, and others. Both complaints sought to hold Edgar County financially responsible as McFatridge's employer for any judgment entered against him.

¶ 6	In June 2005, McFatridge requested representation from the Attorney General in the Steidl lawsuit, pursuant to section 2 of the Act (5 ILCS 350/2 (West 2010)). Section 2 provides, in part:

"§ 2. Representation and indemnification of State employees.

(a) In the event that any civil proceeding is commenced against any State employee arising out of any act or omission occurring within the scope of the employee's State employment, the Attorney General shall, upon timely and appropriate notice to him by such employee, appear on behalf of such employee and defend the action. *** In any such proceeding, the State shall pay the court costs and litigation expenses of defending such action, to the extent approved by the Attorney General as reasonable, as they are incurred.

(b) *In the event that the Attorney General determines that so appearing and defending an employee either* (1) involves an actual or potential conflict of interest, or (2) *that the act or omission which gave rise to the claim* was not within the scope of the employee's State employment or *was intentional, wilful or wanton misconduct, the Attorney General shall decline in writing to appear or defend or shall promptly take appropriate action to withdraw as attorney for such employee.* Upon receipt of such declination or upon such withdrawal by the Attorney General on the basis of an actual or potential conflict of interest, the State employee may employ his own attorney to appear and defend, in which event the State shall pay the employee's court costs, litigation expenses and attorneys' fees to the extent approved by the Attorney General as reasonable, as they are incurred. In the event that the Attorney

General declines to appear or withdraws on the grounds that the act or omission was not within the scope of employment, or was intentional, wilful or wanton misconduct, and a court or jury finds that the act or omission of the State employee was within the scope of employment and was not intentional, wilful or wanton misconduct, the State shall indemnify the State employee for any damages awarded and court costs and attorneys' fees assessed as part of any final and unreversed judgment. In such event the State shall also pay the employee's court costs, litigation expenses and attorneys' fees to the extent approved by the Attorney General as reasonable.

*In the event that the defendant in the proceeding is an elected State official, including members of the General Assembly, the elected State official may retain his or her attorney, provided that said attorney shall be reasonably acceptable to the Attorney General. In such case the State shall pay the elected State official's court costs, litigation expenses, and attorneys' fees, to the extent approved by the Attorney General as reasonable, as they are incurred.*" (Emphases added.) 5 ILCS 350/2 (West 2010).

¶ 7        In a letter dated July 6, 2005, the Attorney General declined McFatridge's request for representation on the grounds that "the acts or omissions which give rise to plaintiff's claim involve allegations of intentional, wilful or wanton misconduct on your part." The letter advised McFatridge that: "[i]f the court or jury find that the acts complained of were not intentional, wilful or wanton misconduct you will be indemnified for any judgment and reasonable attorneys' fees will be reimbursed as provided by law."

¶ 8        In March and April 2009, then Edgar County State's Attorney Matthew Sullivan requested that the Attorney General provide a defense to McFatridge in the Steidl and Whitlock matters. Sullivan also requested that the Attorney General pay at least two-thirds of Edgar County's legal expenses. On May 6, 2009, the Attorney General denied both requests, noting that the claims of both Steidl and Whitlock involved allegations of intentional, willful, or wanton misconduct on the part of McFatridge, and that no court or jury had found that McFatridge did not engage in intentional, willful, or wanton misconduct. The request for indemnification of Edgar County's legal expenses was denied because "the Attorney General does not represent counties and other units of local government."

¶ 9        In July and August 2010, McFatridge's attorney, Terry Ekl, and then Edgar County State's Attorney Mark Isaf renewed their prior requests that the Attorney General provide a defense for McFatridge and/or pay for his defense expenses. In his letter dated July 20, 2010, Ekl stated, in part:

"Two insurance carriers, Scottsdale Insurance and White Mountain Insurance, have been defending this matter under a reservation of rights for several years and had agreed to pay out attorney's fees. Scottsdale was recently successful in winning a declaratory judgment suit in connection with their duty to defend as well as indemnification for any judgment obtained against Mr. McFatridge. Scottsdale informed us that as of May 12, 2010 they will no longer be funding the defense of McFatridge. White Mountain recently informed McFatridge in writing that they will

no longer pay the costs of his defense as of June 30, 2010.

> Pursuant to 5 ILCS 350/2, as the elected State's Attorney of Edgar County, performing acts within his official capacity, he is entitled to have the expenses of his defense including attorneys fees paid by the State of Illinois. My law firm has been involved in this matter for over four (4) years and Mr. McFatridge would exercise his right under 5 ILCS 350/2 to have my firm continue to defend this case to conclusion."

On August 19, 2010, the Attorney General denied the requests to defend McFatridge or to pay his litigation expenses.

¶ 10    McFatridge and Edgar County filed the instant *mandamus* action on August 30, 2010. They alleged that the second paragraph of section 2(b) of the Act imposes a mandatory and nondiscretionary duty on the Attorney General to approve the payment of legal fees and expenses incurred by McFatridge and that plaintiffs would suffer severe and irreparable harm if the Attorney General is not directed to perform her statutory duties. Plaintiffs requested that the court enter an order directing the Attorney General to approve all of McFatridge's reasonable litigation expenses and attorney fees in the defense of the Steidl and Whitlock suits as they are incurred by him.[1]

¶ 11    On October 1, 2010, the Attorney General filed a combined motion to dismiss plaintiffs' *mandamus* action pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010) (allowing combined motions under section 2-615 (735 ILCS 5/2-615 (West 2010)) and section 2-619 (735 ILCS 5/2-619 (West 2010))). The Attorney General contended that plaintiffs' action was barred by the statute of limitations, the doctrine of *laches,* and the doctrine of sovereign immunity, and that the action improperly sought to compel the Attorney General to perform an act that is statutorily committed to her discretion.

¶ 12    On October 21, 2010, the circuit court granted the Attorney General's motion and dismissed plaintiffs' *mandamus* action with prejudice. The court held that the complaint did not meet the standard for a party seeking *mandamus* to "show every material fact necessary to establish a clear and undoubted right to relief sought and a corresponding duty on the part of the [Attorney General] to perform the act demanded."

¶ 13    The appellate court reversed the trial court's order granting the motion to dismiss the *mandamus* complaint. 2011 IL App (4th) 100936, ¶ 54. The court held that "the plain language of the second paragraph of section 2(b) [of the Act] provides McFatridge with a clear, affirmative right to reimbursement of his legal costs as they are incurred, regardless of any determination by the Attorney General of intentional, wilful, and wanton misconduct." *Id.* ¶ 36. Accordingly, the court determined that the state was obligated to pay McFatridge's court costs, litigation expenses, and attorney fees to the extent the Attorney General determines those charges are reasonable. *Id.* The court rejected the Attorney General's remaining arguments that the *mandamus* action was barred by the statute of limitations or

---

[1]Edgar County did not assert a claim for state payment of its own litigation expenses, nor did McFatridge assert that the Attorney General is statutorily obligated to represent him in the underlying litigation.

sovereign immunity, or that McFatridge could not avail himself of the Act's elected-official provision because he was no longer an elected official. *Id.* ¶¶ 37-52.

¶ 14     This court allowed the Attorney General's petition for leave to appeal pursuant to Supreme Court Rule 315 (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). We granted leave to the Illinois Campaign for Political Reform to file a brief *amicus curiae* in support of the Attorney General, and we granted leave to the Illinois State's Attorneys' Association to file a brief *amicus curiae* in support of plaintiffs. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 15                                        Analysis

¶ 16     The sole issue raised on appeal is whether the circuit court properly dismissed plaintiffs' *mandamus* action pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) for failure to show a clear right of recovery on the part of plaintiffs and a clear duty on the part of the Attorney General. A cause of action should be dismissed under section 2-615 only where it is clearly apparent that the plaintiff can prove no set of facts which would entitle him or her to recover. See *DeHart v. DeHart*, 2013 IL 114137, ¶ 18. Our review of the circuit court's dismissal order is *de novo*. *Id.*

¶ 17     "*Mandamus* is an extraordinary remedy used to compel a public officer to perform nondiscretionary official duties." *People ex rel. Senko v. Meersman*, 2012 IL 114163, ¶ 9 (citing *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009)). In order to obtain a *mandamus* remedy, the plaintiff must establish a clear right to the requested relief, a clear duty of the public officer to act, and clear authority of the public officer to comply with the order. *Konetski*, 233 Ill. 2d at 193. A writ of *mandamus* is appropriate when used to compel compliance with mandatory legal standards but not when the act in question involves the exercise of a public officer's discretion. *Id.*

¶ 18     This case requires us to construe section 2(b) of the Act. In construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent. *People v. Howard*, 233 Ill. 2d 213, 218 (2009). The most reliable indicator of that intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Id*. When the statutory language is clear and unambiguous, we must apply it as written, without resort to external sources or other interpretative tools. *People ex rel. Illinois Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23; *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). A court should not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not intend. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010).

¶ 19     Section 2(b) of the Act contains two separate paragraphs which are not numbered. The first paragraph requires the Attorney General to decline to defend, or withdraw her representation of, a state employee where one of three conditions exist: (1) there is an actual or potential conflict of interest, in which case the employee is entitled to payment by the state of his or her reasonable attorney fees, court costs, and litigation expenses as they are incurred; (2) the act or omission which gave rise to the claim was not within the scope of the employee's state employment, in which case the state does not pay the employee's attorney fees and expenses as they are incurred; or (3) the act or omission which gave rise to the claim

-6-

was intentional, willful or wanton misconduct, in which case the state does not pay the employee's attorney fees and expenses as they are incurred. However, if the Attorney General's refusal to defend the employee is based on the second or third condition, and a court or jury later finds that the act or omission was both within the scope of employment and was not intentional, willful, or wanton misconduct, the employee shall be indemnified by the state for his or her damages and reasonable attorney fees, court costs, and litigation expenses.

¶ 20    The second paragraph of section 2(b) provides that, in the event that defendant is an elected state official, he or she may retain his or her own attorney, provided that the choice of attorney is "reasonably acceptable to the Attorney General." 5 ILCS 350/2(b) (West 2010). The paragraph also provides that, "in such case the State *shall pay* the elected State official's court costs, litigation expenses, and attorneys' fees, to the extent approved by the Attorney General as reasonable, *as they are incurred*." (Emphases added.) *Id.*

¶ 21    The appellate court below held that the Attorney General had no discretion to refuse plaintiffs' request for payment of McFatridge's attorney fees and expenses as incurred because the second paragraph of section 2(b) of the Act necessarily limits the Attorney General's authority with regard to elected officials. 2011 IL App (4th) 100936, ¶ 34. Accordingly, because McFatridge was an elected state official at the time of the alleged acts giving rise to the two civil lawsuits, he is entitled to payment by the state of his attorney fees and expenses as they are incurred. *Id.* ¶ 36. The appellate court agreed with plaintiffs that the first paragraph of section 2(b), which requires that the Attorney General withdraw her representation or decline to defend an employee where she determines that the acts giving rise to the claim were intentional, willful, or wanton, does not apply to elected officials. *Id.* ¶ 36. Thus, according to plaintiffs and the appellate court, even where an elected state official has engaged in intentional, willful or wanton acts or omissions, the official must be reimbursed by the state for his attorney fees and expenses as they are incurred. Moreover, the state may never recover the funds expended to pay for the official's defense. For the following reasons, we disagree with this interpretation of the statutory language.

¶ 22    According to the appellate court, "[b]y excluding the more general category of nonelected employees from [the second] paragraph, the General Assembly demonstrated it intended to create a much narrower category of employee to treat differently." *Id.* ¶ 33 (citing *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) (where a statute contains both a general and a specific provision relating to the same subject, the specific provision prevails)). In other words, because the second paragraph of section 2(b) refers to elected officials specifically, and is set forth in a separate paragraph, it must supplant the first paragraph of section 2(b) entirely in cases involving elected officials. This analysis is flawed, however, because the two provisions do not "relat[e] to the same subject." *Id.*; see also *People v. Botruff*, 212 Ill. 2d 166, 175 (2004) ("A fundamental rule of statutory construction is that where there exists a general statutory provision and a specific statutory provision, either in the same or in another act, *both relating to the same subject*, the specific provision controls and should be applied." (emphasis added)).

¶ 23    The subject of the second paragraph in section 2(b) is an elected official's choice of counsel. It gives elected officials the option to choose their own attorneys at state expense,

an option not available to nonelected state employees. By contrast, the first paragraph addresses whether the Attorney General must represent a state employee and whether the state must pay for a defense. The two provisions in section 2(b) do not relate to the same subject and are not in conflict with one another. There is no indication in the language that the second paragraph was intended to displace any part of the preceding paragraph or that the legislature intended to exempt public officials entirely from the provisions in the first paragraph. We conclude that the most natural reading of the two paragraphs in section 2(b) is that, once the Attorney General has determined that a suit against an elected official is within the scope of the official's state employment and does not involve intentional, willful, or wanton misconduct, the elected official has the right to choose his or her own attorney at state expense. Where an elected official is determined to have acted intentionally, willfully, or wantonly, however, the official is not entitled to have his attorney fees paid as they are incurred. Under this scenario, an elected official is treated as any other state employee under the Act.

¶ 24    There is no question that the Act considers an elected state official to be an "employee." See 5 ILCS 350/1(b) (West 2010) (defining an "employee" as "any present or former elected or appointed officer, trustee or employee of the State"). Accordingly, elected officials are necessarily included within the group of "employees" referred to in the first paragraph of section 2(b). The plain language draws no distinction between elected and nonelected employees. Had the legislature intended to exempt elected officials from the class of "employees" subject to the requirements of section 2(b), it would have made such an exemption more explicit, either by referring to "nonelected employees" in the first paragraph or by some other means. Plaintiffs' reading of the first paragraph of section 2(b) as not applying to elected officials violates the well-established principle that we will not read language into a statute which conflicts with the clearly expressed legislative intent. See *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill. 2d 402, 429 (2005); *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999).

¶ 25    Moreover, section 2(c) of the Act, pertaining to judges, shows that the legislature knew how to exempt a class of employees from the exercise of the Attorney General's discretion as provided in section 2(b). Section 2(c) states:

> "(c) *Notwithstanding any other provision of this Section*, representation and indemnification of a judge under this Act shall also be provided in any case where the plaintiff seeks damages or any equitable relief as a result of any decision, ruling or order of a judge made in the course of his or her judicial or administrative duties, *without regard to the theory of recovery employed by the plaintiff \*\*\**." (Emphases added.) 5 ILCS 350/2(c) (West 2010).

The fact that the legislature specifically excluded judges from the Attorney General's authority to determine whether an employee's actions were intentional, willful, or wanton misconduct demonstrates that it could have also specifically excluded elected officials as a group, but that it chose not to do so. See, *e.g.*, *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24 ("When the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the

inclusion or exclusion [citations], and that the legislature intended different meanings and results.").

¶ 26    Despite the lack of any language in the statute to suggest that the legislature intended to exempt elected officials, other than judges, from the first paragraph of section 2(b), plaintiffs argue that "[b]y treating elected officials differently than ordinary public employees, the General Assembly could reasonably have wished to remove any temptation from the Attorney General's hands to abuse the great discretion she claims she has in deciding whether or not to pay for an elected official's legal counsel." Appellee Brief at 6. The appellate court agreed, holding that, "[i]t is reasonable to conclude the legislature sought to insulate partisan elected officials from potential withholding of representation or from arbitrary denial of payment for attorney fees when the opposite party is in control of those decisions." 2011 IL App (4th) 100936, ¶ 33. We find no support in the statutory language that the legislature intended to shield elected officials from the decisions of the Attorney General where their political affiliations differ. Nor is there any evidence for the appellate court's finding that the legislature intended for the Act to provide "special protection to elected State's Attorneys whose decisions to prosecute individuals must be able to be made without the threat of financial bankruptcy should they be sued." *Id.* ¶ 33. The statute does not single out State's Attorneys for special protection. In fact, there is no specific reference to State's Attorneys anywhere in section 2 of the Act. We thus reject the reading of the statute advanced by plaintiffs and accepted by the appellate court. See *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996) ("Courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment.").

¶ 27    Construing the Act as a whole, it is clear from the plain language that the legislature did not intend to exclude elected officials from the class of state employees whom the Attorney General may decline to represent where she determines that the act or omission in the claim is for intentional, willful, or wanton misconduct. The second paragraph of section 2(b) does not supercede the first paragraph. It merely entitles an elected official to choose his or her own defense counsel, and have his or her reasonable attorney fees and expenses paid by the state as they are incurred, in the event that none of the exceptions in the first paragraph applies. Accordingly, plaintiffs have not established a clear right to the relief requested in their *mandamus* complaint, nor have they shown a clear duty on the part of the Attorney General to approve payment by the state of McFatridge's defense expenses.

¶ 28                                                    Conclusion

¶ 29    For the foregoing reasons, we reverse the appellate court's judgment and affirm the circuit court's judgment dismissing with prejudice the complaint for a writ of *mandamus*.

¶ 30    Appellate court judgment reversed.

¶ 31    Circuit court judgment affirmed.